THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

HUBERT NATHANS[1] and EDWARD
CULTON,

                    Defendants.

CRIMINAL CASE NO.

1:18-CR-00168-TCB-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court are Defendant Edward Culton's motion [Doc. 68] for the name(s) and location(s) of confidential informant(s) and motion [Doc. 69] and supplemental brief [Doc. 74] to suppress evidence obtained as the result of the execution of a federal search warrant [Doc. 74-1 ("Search Warrant") and 74-2 ("Affidavit")] for his residence located at 250 Pharr Road, Apartment 1011, Atlanta, Georgia.

## I.    Disclosure Confidential Informant

Pending before the court is Defendant Culton's motion [Doc. 68] for disclosure of the confidential informant(s) ("CI") that made the controlled drug purchases from

---

[1]Defendant Hubert Nathans has plead guilty in the related case, 1:18-CR-314-TCB.

Defendant Culton's co-defendant, Hubert Nathans.  The Government alleges that the source of the controlled substances sold to the CI(s) is Defendant Culton.  In order to prevent disclosure of Defendant's theory of defense, Defendant sought and was allowed to make an *en camera* presentation to the court regarding the reasons why disclosure of the CI's/CIs' name(s) and location(s) was material to the defense.  That presentation occurred on February 6, 2019, and is recorded under seal.  Thereafter, the court heard from the Government, opposing the motion, *en camera* on February 13, 2019, also recorded under seal, regarding the reasons for non-disclosure.

"In Roviaro[ v. United States, 77 S. Ct. 623 (1957)], the Supreme Court recognized that the government has the privilege to withhold from disclosure the identity of its informants, but that this privilege is limited." United States v. Degaule, 797 F. Supp. 2d 1332, 1384 (N.D. Ga. 2011).  In order to determine whether disclosure of a confidential informant is appropriate, "a court must engage in a balancing test, taking into account the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." United States v. Gutierrez, 931 F.2d 1482, 1490 (11th Cir. 1991) (citing Roviaro, 77 S. Ct. at 627-28).  This inquiry focuses "on three factors:  (1) 'the extent of the informant's participation in the criminal activity'; (2) 'the directness of the relationship between

2

the defendant's asserted defense and the probable testimony of the informant'; and (3) 'the government's interest in nondisclosure.'"[2] United States v. Moore, 611 Fed. Appx. 572, 575 (11th Cir. 2015) (quoting United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985)); and see United States v. Flores, 572 F.3d 1254, 1265 (11th Cir. 2009) (same). The burden is on Defendant to prove that the informant's probable testimony would bear a direct relationship on the defendant's asserted defense. However, "'[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure.'" United States v. McDonald, 935 F.2d 1212, 1217 (11th Cir. 1991) (citations and footnote omitted); and see Moore, 611 Fed. Appx. at 575 ("The defendant has the burden of showing that a CI's testimony 'would significantly aid in establishing an asserted defense.'") (citation omitted); Degaule, 797 F. Supp. 2d at 1384 ("The burden is on the defendant to establish that the Roviaro criteria in a particular case counsel in favor of disclosure by way of sufficiently specific demonstration of the relevancy and potential helpfulness of each of the informers' testimony.").

---

[2]Because Defendant does not want the Government to be advised of the reasons he is seeking disclosure of the CI's/CIs' name(s) and location(s), necessarily, the court's discussion of its factual analysis regarding the second factor will be limited.

3

With respect to the first and second factors, the participation of the CI/CIs making the controlled drug buys from Nathans is, needless to say, more significant than a mere tipster, but the CI/CIs lacked any direct contact with Defendant Culton and nothing before the court indicates that the CI/CIs actually has/have any information regarding the source of the controlled substances that Nathans sold in January and February 2019.[3]  Additionally, the drug purchases were "controlled" - meaning that law enforcement officers met with the CI/CIs before each purchase, monitored the purchases through the audio recordings and met with the CI/CIs following each purchase for debriefing.  Particularly, the law enforcement officers obtained from the CI/CIs the controlled substances purchased from Nathans on each occasion, and, therefore, those officers should be able to identify based on chain of custody the specific substances for each controlled purchase.  The court has been presented with no non-speculative reasons why the CI/CIs either would be in a position to offer additional information about each controlled buy or would be able to cast doubt on any testimony that Nathans may offer concerning the source of the controlled substances

---

[3]The court is basing this summary of the CI's/CIs' involvement and how the controlled buys were conducted on the affidavit in support of the search warrant for Defendant Culton's residence.  The affidavit is attached to Defendant's brief in support of his motion to suppress and is discussed in detail *infra*.  [Doc. 74].

4

sold to the CI/CIs.  See Degaule, 797 F. Supp. 2d at 1384 ("'Mere conjecture about the possible relevance of the informant's testimony is insufficient.'") (quoting United States v. Young, 161 Fed. Appx. 922, 927 (11th Cir. 2006)).

And, as the Government is aware, Defendant seeks disclosure of the CI's/CIs' name(s) and location(s) in order to offer impeachment evidence against Nathans' girlfriend, Alexandra Lagouros ("Lagouros"), who was present during each controlled buy and who Defendant contends provided false information to federal agents concerning her knowledge of Nathans' activities selling controlled substances - she denied that Nathans had sold any controlled substances since 2016 as far as she was aware.  The Government, however, has stated that Lagouros will not be a witness at trial.  Defendant's concern that the Government will decide at some point to call Lagouros at trial is speculative and does not provide grounds for disclosure.

As noted, the burden is on Defendant to "prove that the informant's probable testimony would bear a direct relationship on the defendant's asserted defense." McDonald, 935 F.2d at 1217.  Because Defendant has failed to establish this factor, the court is not required to "consider the strength of the government's interest in preserving the confidentiality of the informant." United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984); and see United States v. Acosta, 807 F. Supp. 2d 1154, 1273

5

(N.D. Ga. 2011) (same).  Disclosure of the CI's/CIs' name(s) and location(s) is not required.  And consideration of the Government's *en camera* presentation reinforces the court's decision.

"[T]he interest of law enforcement in protecting informants is a material consideration, although certainly not a consideration entitled uniformly to decisive influence."  United States v. Lewis, 156 F. Supp. 2d 1280, 1291 (M.D. Fla. 2001).  Without disclosing details, the Government generally explained that the CI/CIs continue to work with the Roswell Police Department and that disclosure of name(s) and location(s) could impact ongoing law enforcement operations.  The Government acknowledged that no actual threats had been made against the CI/CIs; however, there are the usual concerns of retribution inherent against individuals known to be working with local police departments.  See id. ("No specific evidence in this record suggests an explicit threat to this informant; the inherent and constant exposure of an informant to acts of vengeance establishes the threat[; t]herefore, disclosure of an informant's identity usually requires some material showing of a testimonial advantage not available to the defendant through other witnesses.").  Based on the information provided by the Government weighed against Defendant's speculative reasons offered in support of disclosure, the court denies Defendant's motion "in order (1) to preserve

6

active and productive sources of information for law enforcement and (2) to protect cooperating persons from gratuitous exposure to revenge." Id.

For the foregoing reasons, the court **DENIES** Defendant's motion [Doc. 68] for disclosure of the CI's/CIs' name(s) and location(s).

## II.   Motion to Suppress Evidence

Also pending before the court is Defendant's motion to suppress evidence. [Doc. 69]. The Government opposes the motion to suppress. [Doc. 76]. In support of the motion to suppress the federal search warrant for his residence, Defendant contends that he is entitled to a Franks hearing[4] because the affiant for the search warrant deliberately or with reckless disregard for the truth included misleading information in the affidavit and omitted material information from the affidavit and that, when the affidavit is corrected, probable cause is lacking for the warrant. [Docs. 69 and 74]. The Government opposes the motion to suppress contending that Defendant has not made a sufficient showing to entitle him to a Franks hearing and that the affidavit otherwise provides probable cause for the search. [Doc. 76]. After consideration of the arguments of the parties, the search warrant and affidavit,

---

[4]See Franks v. Delaware, 98 S. Ct. 2674 (1978).

additional evidence provided by the parties and binding and persuasive legal authority, the court recommends that Defendant's motion to suppress be denied.

### a.    Search Warrant & Affidavit

On February 15, 2018,[5] Special Agent Kimbrell Dodder, Drug Enforcement Administration ("DEA"), presented an application and affidavit for a search warrant for 250 Pharr Road, Apartment 1011, Atlanta, Georgia ("Target Location"), to search for evidence of violations of 21 U.S.C. §§ 841, 843(b) and 846, relating to possession with the intent to distribute and conspiracy to distribute controlled substances. (Search Warrant; Affidavit).  Agent Dodder ("Affiant") began the affidavit by outlining his training and experience as a law enforcement officer, primarily focusing  on his training and experience in investigating drug trafficking organizations. (Affidavit ¶ 1).  Based on that training and experience, Affiant outlined the characteristics of drug traffickers and the evidence of and related to drug trafficking activity anticipated to be found in their residences.  (Id. ¶ 2).  In support of probable cause to search the Target Location, Affiant provided the following information.

---

[5]The parties agree that, although the application bears the date of February 14, 2018 (Affidavit), the application and affidavit was presented to Magistrate Judge Larkins on February 15, 2018 - the date on the search warrant (Search Warrant).  The Magistrate Judge signed and dated (2:24 p.m.) the warrant on February 15, 2018.  (Id.).

In August 2017, the Roswell Police Department ("RPD") began receiving anonymous complaints about Nathans being involved in the distribution of Roxicodone pills and identifying 828-243-9170 ("9170") as the number he used to conduct his drug business in Roswell and Alpharetta. (Id. ¶ 7). Based on toll records and historical cell site data for 9170, Nathans frequently contacted the number, 404-988-2707 ("2707"), that was linked to Defendant Culton (Defendant's Facebook account and lease for the Target Location),[6] and frequently traveled to the vicinity of the Target Location. (Id. ¶ 7a). In December 2017, RPD responded to a reported drug overdose involving Grant Smith, who had been transported to the hospital, and were advised by one of Smith's friends, Reeve King, "that King had previously purchased pills from NATHANS" and "that NATHANS' drug source of supply was located in the vicinity of 269 Buckhead Avenue, Atlanta, Georgia 30505." (Id. ¶ 8). This is the address for the Buckhead Library, and the agents learned when they traveled to the location that the parking lot of the Library is adjoining to the parking lot for the Target Location. (Id.). In January 2018, RPD received additional complaints regarding

---

[6]Affiant further advised that the Target Location's management provided the lease for the apartment executed on September 22, 2017, by Defendant, for which he provided the 2707 number. On February 15, 2018, in the parking space for Defendant's apartment, the agents observed a vehicle that was registered in the name of Defendant's father with an address in DeKalb County. (Id. ¶ 18).

Nathans distributing fentanyl, heroin and pressed pills resembling Roxicodone but containing fentanyl.  Nathans used blocked numbers and Instagram, moniker "rich_homie_hu," to conduct his drug business.  Nathans' Instagram account is "friends" with the Instagram account the agents associated with Defendant Culton, "ehwer93."  (Id. ¶ 9).

On January 25, 2018, RPD utilizing a confidential source ("CS")[7] made a controlled purchase of two suspected Roxicodone pills from Nathans after contacting Nathans on his Instagram account.  (Id. ¶ 10).  Officers observed the CS meet with Nathans, who was driving a white Lexus, in Roswell and purchase the pills.  (Id.).  On January 29, 2018, a tracking device was authorized for Nathans' Lexus.  Everyday since installation of the tracker, except January 31 and February 5, 11 and 13, the tracker has placed Nathans' Lexus in the area of the Target Location, including before controlled buys by the CS from Nathans.  (Id. ¶ 11).  On January 30, 2018, at 7:47 p.m., the Lexus was tracked to the vicinity of the Target Location, leaving at approximately 8:15 p.m.  (Id. ¶ 12).  Later, at 8:45 p.m., the CS made a controlled buy of two suspected Roxicodone pills from Nathans, who was still driving the Lexus, in

---

[7]This is the same individual(s) that Defendant referred to in the motion for disclosure of name(s) and location(s).

Roswell.  (Id. ¶ 13).  On February 6, 2018, Nathans' Lexus was tracked to the vicinity of the Target Location, and video surveillance showed Defendant Culton, at 10:36 a.m., exiting the building and entering the front passenger seat of the Lexus, while the Lexus remained parked.  Defendant exited shortly thereafter and entered the building, and Nathans departed.  (Id. ¶ 14).

On February 14, 2018, at approximately 10:39 a.m., Nathans' Lexus was tracked to parking lot of the Target Location, and video surveillance showed Defendant Culton exit the building and enter the Lexus, while it remained parked at the location.  After Defendant exited the Lexus, the Lexus departed at 10:47 a.m.  (Id. ¶ 15).  Affiant opined, "Based on the investigation to date, I believe CULTON provided a number of pills containing controlled substances to NATHANS during this meeting."  (Id. ¶ 15a). Later on February 14, RPD had the CS contacted Nathans via Instagram to purchase three Roxicodone pills.  Nathans instructed the CS to meet at Nathans' home; the agents observed the white Lexus parked at the residence.  (Id. ¶ 16).  The CS advised that he followed Nathans to the kitchen of the residence where Nathans removed three pills from a bag containing approximately twenty to twenty-five pills.  (Id.).

Affiant also advised, based on information obtained from Walmart, that Culton wired a total of $12,000 to three recipients in China from August 30, to September 9, 2017.  He used six different transactions and four Walmart locations.  (Id. ¶ 17).

On February 15, 2018, a federal search warrant for Nathans' residence was executed, and Nathans' girlfriend, Lagouros, was present and spoke to the agents.  (Id. ¶ 19).  She advised that Nathans purchased pills containing controlled substances from Defendant Culton at the Target Location and that on multiple occasions in 2017 and 2018, she had accompanied Nathans to the parking lot of the Target Location where Defendant would exit the building, enter Nathans' vehicle, and hand Nathans a bag with pills.  Nathans would hand Defendant Culton money, and Defendant would exit the vehicle and reenter the building.   (Id.).   She identified Defendant from his Facebook photograph.  The last such trip was within the last week to week and a half. (Id.).

Additional evidence provided by the Government and Defendant with respect to the issue of whether a Franks hearing should be held on the motion to suppress follows.  Defendant provided the DEA report of Lagouros' interview on February 15, 2018, at approximately 12:00 p.m., during execution of the search warrant. [Doc. 74-3 ("Lagouros Report")].   The report records Lagouros as stating that both she and

12

Nathans had recently overdosed on pills. (Id.). She further advised that Nathans purchased pills from "Edward" and identified Defendant Culton as "Edward" from a Facebook photo. She advised that she and Nathans would travel to Buckhead, near Peachtree Street, a high rise apartment building, that Nathans would pull in near the parking garage, and that Culton would exit the building and get in the vehicle where he would provide Nathans a bag of pills (estimated approximately 25 pills) and Nathans would give Culton money. Culton would then exit the Lexus and reenter the building. (Id.). She traveled with Nathans several times. (Id.).

The report also indicates that agents asked Lagouros if she would accompany them to RPD for a further interview, and she agreed. (Id.). At approximately 2:35 p.m., the interview was continued. Lagouros further described the location of Defendant's residence and advised that Nathans started buying pills from Defendant in the summer of 2017 and that she had gone with Nathans approximately ten times to see Defendant. She claimed that Nathans was not currently selling pills to her knowledge. (Id.). The recording of Lagouros' interview at RPD provides the following additional information, in summary and relied on by Defendant. (Gov't Exh. 1 ("Recording")). The recording starts at approximately 14:18 (2:18 p.m.) with the DEA agent entering the interview room at approximately 14:34 (2:34 p.m.). (Id.).

13

Lagouros advised that she was a drug addict and that Nathans did not trust her with the pills he possessed.  She denied knowing how many pills Nathans purchased and the cost.  (Id.).  At approximately 14:46 (2:46 p.m.) [Doc. 74 at 5; Doc. 76 at 4], Lagouros denied knowing that Nathans was selling pills at that time.  And she subsequently denied knowing how Nathans made money to pay for his own pills, and she stated that she had never seen Nathans sell pills to anybody and had never discussed it with him. (Recording).  She claimed the last time she saw Nathans sell pills was in 2016 before she went in for rehabilitation.  (Id.).

Defendant also provided the RPD reports of the controlled buys from Nathans on January 25, 2018, January 30, 2018, February 2, 2018, and February 7, 2018.  [Doc. 74-4 ("Buy Reports")].  After each controlled buy, when the CS returned to the officers and turned over the pills purchased from Nathans, he advised that Nathans' girlfriend (and sometimes a small child) was in the Lexus at the time of the purchase of the pills. (Id.).  On the February 7, 2018, purchase, the CS advised that Nathans' girlfriend "was smoking a pill on foil when [he] approached the vehicle."  (Id.).

And finally, Defendant presented the RPD reports concerning the December 1, 2017, overdose by Smith and interviews with King and Smith.  [Doc. 74-5 ("King Report")].  King provided information that Smith's overdose was on pills, supposedly

14

containing Roxicodone but that he believed contained fentanyl, that were purchased from Nathans. He and Smith both purchased pills from Nathans. (<u>Id.</u>). Officers also interviewed Smith at the hospital, and he advised that he purchased Xanax illegally and brought it with him from Athens. (<u>Id.</u>). King also advised officers that he, King, had purchased pills from Nathans in the past, that he would meet with Nathans in parking lots near Nathans' residence in Roswell, that Nathans drove a Lexus to the meetings, and that the pills sold for $35.00 to $50.00 each. He provided the 9170 number for Nathans. (<u>Id.</u>). King agreed to further assist officers. (<u>Id.</u>). In response to a text message from a RPD detective, on December 11, 2017, King responded, "269 Buckhead Ave NE Atlanta, Ga 30305 United States" and "That's the address he gets it from. All I know is that the guy he gets it from has to check into jail at 10pm and gets out at 6am." (<u>Id.</u>).

Additional facts will be set forth as necessary during discussion of the motion to suppress.

### b.   <u>Franks</u> and Probable Cause

Defendant contends that due to the inclusion of materially false information in and the omission of material information from the affidavit for the search warrant, he is entitled to a <u>Franks</u> hearing. [Docs. 69 and 74]. Defendant contends that Affiant

omitted the following material facts from the affidavit: (1) that Lagouros overdosed on pills, that on February 7, 2018, she was observed smoking a pill, and that she was a drug addict such that even Nathans did not trust her; (2) that Lagouros lied to officers and agents when she denied knowing that Nathans was currently selling pills and that she had never been present when he sold pills or discussed selling pills with him; and (3) that King advised that Smith had overdosed on pills purchased from Nathans but that a report indicates that Smith overdosed on alcohol and Xanax.  Defendant also alleges that Affiant included in the affidavit a material misrepresentation that King identified Nathans' source of supply's address as being *in the vicinity of* 369 Buckhead Avenue when King's message stated that 369 Buckhead Avenue was the *address* where Nathans obtained the pills.  [Doc. 74 at 8-11].  The Government opposes the request for a <u>Franks</u> hearing and responds, without conceding any intentional or material representations or omissions, that including in the affidavit information about Lagouros' drug overdose and correcting the affidavit to remove "in the vicinity of" for King's statement about the address for the source of supply does not alter the probable cause finding.  [Doc. 76 at 3].  And the Government argues that the additional information (1) from Lagouros' recorded interview at the RPD, beginning at 2:35 p.m., regarding her addiction and apparent lies to the agents was not known to Affiant at the

16

time he swore to the affidavit before it was signed at 2:24 p.m. by Magistrate Judge Larkins and (2) about the source of the drugs causing Smith's overdose (which was not addressed in the affidavit) has nothing to do with the information included in the affidavit about King's prior purchases of pills and, if included, does not impact the probable cause determination.  [Id. at 3-6].

In Franks, 98 S. Ct. 2674, the Supreme Court held that where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in a search warrant affidavit, and if the allegedly false statement was necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine admissibility of the fruits of the search.  Franks, 98 S. Ct. at 2684-85; see also United States v. Sarras, 575 F.3d 1191, 1218 (11th Cir. 2009).  "[T]o prevail in a Franks challenge one must establish (1) that information contained in an affidavit was untrue, (2) that inclusion of the untrue information was either deliberate or in 'reckless disregard for the truth,' and (3) that the untrue information was an essential element of the probable cause showing relied upon by the judicial officer in issuing the search warrant."  O'Ferrell v. United States, 253 F.3d 1257, 1267 (11th Cir. 2001) (citation omitted).

And Franks is applicable to information omitted from an affidavit for a search warrant. "[A] warrant affidavit violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.'" Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997) (citation omitted). "A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it 'is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself.'" Id. at 1327 (citation omitted); accord United States v. Owden, 345 Fed. Appx. 448, 454 (11th Cir. 2009) (same). "Omissions that are not reckless, but are instead negligent . . . or insignificant and immaterial, will not invalidate a warrant. . . . Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." Madiwale, 117 F.3d at 1327; accord United States v. Kapordelis, 569 F.3d 1291, 1309 (11th Cir. 2009) ("The defendant bears the burden of showing that, 'absent those misrepresentations or omissions, probable cause would have been lacking.'") (citation omitted). No Franks hearing is required, if, when the omitted information is added to the affidavit, the affidavit's content still establishes probable cause for the search. Kapordelis, 569 F.3d at 1309; Owden, 345 Fed. Appx.

18

at 454 (if the challenge is based on information omitted from the affidavit, then the

showing must be that the "'omission was essential to the finding of probable cause'")

(quoting United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir. 2006)).

Accordingly, to mandate a Franks evidentiary hearing,

the [defendant's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Franks, 98 S. Ct. at 2684-85. The court, when applying this standard to Defendant's

request for a Franks hearing, finds that Defendant has not made a substantial

preliminary showing that material misrepresentations were intentionally and/or

recklessly included in the affidavit or that material information was intentionally

19

and/or recklessly omitted from the affidavit or, alternatively, made a showing that such alleged misrepresentations or omissions undermined the probable cause otherwise set forth in the affidavit as necessary for a <u>Franks</u> hearing to be held.

The court will first address the information regarding Lagouros. With respect to Affiant's allegedly intentional and deliberate failure to include in the affidavit the facts that Lagouros was a "drug addict" and lied to interviewing agents during the recorded interview at the RPD about Nathans not currently selling pills and that she had never seen Nathans sell pills or discussed that with him [Doc. 74 at 9], the simple fact is that, when Affiant swore to the affidavit in support of the search warrant, there is no evidence that Affiant had any idea that Lagouros would apparently lie to the agents during the *upcoming* interview. In fact, the evidence establishes that Lagouros had not yet made those statements. Her recorded interview at the RPD began with the DEA agent entering the room at approximately 2:34 p.m., and the lies identified by Defendant were not expressed by her before 2:46 p.m. (Lagouros Report; Recording); [Doc. 74 at 5; Doc. 76 at 4-5]. However, the Magistrate Judge signed the search warrant based on the affidavit sworn to by Affiant at 2:24 p.m. - before Lagouros made the statements identified by Defendant in support of his motion. (Search Warrant). There is simply no basis to find that Affiant knowingly and intentionally omitted from

20

his affidavit any information from the interview not yet conducted at the RPD.  See O'Ferrell, 253 F.3d at 1267; Madiwale, 117 F.3d at 1326-27.  And, with respect to the information known to Affiant regarding Lagouros' admission of an overdose and the CS observing her smoking a pill in February 2018, the Government argues that the inclusion of that information in the affidavit does not undermine Magistrate Judge Larkin's reliance on her statements.  The court agrees.

The information about Lagouros' drug usage is relevant to consideration of her credibility by the issuing Magistrate Judge; however, inclusion of the information about her drug overdose and use of drugs on one occasion, in light of the other information corroborating her statements during the initial interview, does not undermine the reliability of her statements recounted in the affidavit.  First, the court notes that Defendant "made no showing that [Lagouros'] drug use affected [her] ability to provide accurate information or otherwise impacted the probable cause finding." United States v. Scott, 610 F.3d 1009, 1015 (8th Cir. 2010) (citing United States v. Wilson, 324 Fed. Appx. 546, 548 (8th Cir. 2009) ("[T]here is no evidence that the [confidential informant's] drug use . . . affected her ability to relay accurate information to police."); United States v. Martin, 866 F.2d 972, 979 (8th Cir. 1989) (omission from search warrant affidavit "of informant's drug addiction 'was of no

21

consequence to the determination of probable cause'")); accord United States v. Holmes, _ Fed. Appx. _, _, 2019 WL 1501538, at **4-5 (11th Cir. April 4, 2019) (in the context of accessing reliability of informants' information to establish drug quantity at sentencing, the court found that the record corroborated the informants' accounts of purchasing drugs from the defendant and determined that the fact of one informant's criminal history and past drug use was "insufficient to render CI-2 unreliable, absent some evidence presented by the defendants showing that CI-2's memory was faulty due to a drug addiction or past dishonesty") (citing, *inter alia*, United States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995) ("[T]he mere fact that these witnesses were drug users does not automatically prove that they are unreliable. [The defendant] has pointed to no evidence [that] indicates that these witnesses were addicts with impaired memories, which would call their testimony into question.")).

Second, the information that Lagouros provided was corroborated in the affidavit which independently supported a finding of her reliability.[8] See United States

---

[8]Additionally, both Lagouros and King admitted to engaging in criminal conduct and gave a first hand account of that conduct in which she or he was a participant further supporting a finding of reliability. See United States v. Mitchell, 366 Fed. Appx. 6, 14 (11th Cir. 2010); United States v. Deering, 296 Fed. Appx. 894, 899 (11th Cir. 2008); United States v. Barfield, 507 F.2d 53, 58 (5th Cir. 1975); United States v. Villaverde-Leyva, 2010 WL 5579825, at *7 (N.D. Ga. December 9, 2010), report and recommendation adopted by 2011 WL 121932 (N.D. Ga. January 14, 2011). And

v. Rivera, 410 F.3d 998, 1002 (8th Cir. 2005) (because "[t]he statements of the confidential informant were corroborated by surveillance and the drugs obtained after the controlled buys[,]" omissions from the affidavit about informant's long-term heroin use and receipt of cash payments for information did not make "his general credibility . . . a basis for finding error"); United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (noting that "'sufficient independent corroboration of an informant's information'" can provide a basis for establishing veracity) (citation omitted); United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (corroborating evidence gathered by officers can provide indicia of reliability); United States v. Baker, 2019 WL 1125685, at **4-5 (S.D. Ohio March 12, 2019) (rejecting the argument that the affiant should have disclosed that the informant was a drug user, the court found that the fact "the informant was a drug user might have been material if the information provided was not corroborated by other sources"). Lagouros identified Defendant Culton as

---

neither individual was an anonymous informant but were identified in the affidavit. See United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) ("Unlike the anonymous tipster, a witness who directly approaches a police officer can also be held accountable for false statements."); C.B., By and Through Breeding, Jr. v. Driscoll, 82 F.3d 383, 388 (11th Cir. 1996) ("The tip was provided to administrators directly, rather than anonymously, and was thus more likely to be reliable because the student informant faced the possibility of disciplinary repercussions if the information was misleading.").

Nathans' source for pills and provided details about the multiple trips that she made with Nathans to the parking lot of Defendant's high-rise apartment to obtain pills. As recounted in the affidavit, they would travel to the Target Location and park outside. She stated that Defendant would then exit the building and get into the Lexus, that the pill purchase from Defendant would take place, and that Defendant would exit the Lexus and reenter the building. (Lagouros Report). Her information is strikingly similar to both the tracking information provided by the Lexus and Nathans' cellular telephone and the video surveillance at the Target Location which placed the Lexus at the Target Location on repeated occasions and show the Lexus parked outside and Defendant exiting the building, entering the Lexus for a short time, and then exiting and reentering the building, at which time the Lexus left. (Affidavit ¶¶ 11-16). Additionally, on January 30, 2018, following the Lexus being tracked to vicinity of the Target Location at approximately 8:15 p.m., Nathans sold the CS a quantity of pills at approximately 8:45 p.m., giving rise to the reasonable inference that those pills were obtained from Defendant. And, on February 14, 2018, although later in the day, Nathans again sold the CS a quantity of pills after meeting with Defendant. (Id. ¶¶ 12-13, 15-16). In light these circumstances, Affiant also opined, "Based on the investigation to date, I believe CULTON provided a number of pills containing

24

controlled substances to NATHANS during this meeting." (Id. ¶ 15a). See United States v. Leach, 498 Fed. Appx. 915, 917 (11th Cir. 2012) ("Opinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation."); United States v. Umansky, 291 Fed. Appx. 227, 228 n.1 (11th Cir. 2008) (noting that in reviewing the sufficiency of probable cause for a search warrant, the appellate court "give[s] due weight to the inferences that the judge and law enforcement officers drew from the facts").

Lagouros' statement is also corroborated by the independent statement of Reese King. Preliminary to discussing King's statement, as noted *supra*, Defendant contends that information was omitted from the affidavit regarding the source of the drugs causing King's friend's, Grant Smith, drug overdose and that misleading information was included in the affidavit about the "address" where Nathans obtained pills. [Doc. 74 at 10-11]. Because the information about the source of Smith's drugs on the day of his overdose is immaterial to the probable cause determination, the omission of - for that matter, the inclusion of - that information does not support Defendant's argument for a Franks hearing. The affidavit does not make any reference to the source of the drugs arguably causing Smith's overdose - which is, in fact, conflicting (King Report); instead, in the context of explaining how the RPD officers

25

made contact with King, the affidavit simply states that Smith had overdosed and been transported to the hospital (Affidavit ¶ 8).[9]  The affidavit then recounts information provided by King about *his,* not Smith's, *prior* and unrelated purchase of pills from Nathans.  (Id.).  And with respect to the identification of the address for Nathans' source of supply, the Government, without arguing whether there is any support for finding that Affiant intentionally and deliberately intended to mislead the issuing judge, contends that removal of the "in the vicinity of" language from the sentence, "NATHANS' drug source of supply was located in the vicinity of 269 Buckhead Avenue" does not alter the probable cause finding.  [Doc. 76 at 3].  The court agrees.

Accordingly, as corrected, the affidavit explains that RPD officers encountered King when responding to a call about a drug overdose and spoke to King.  King stated that he "had previously purchased pills from Nathans" and that Nathans' "drug source of supply was located" at the address "269 Buckhead Avenue, Atlanta, Georgia 30505. 269 Buckhead Avenue is the address for the Buckhead Library." (Affidavit ¶ 8).  The affidavit further provides that agents traveled to the location and "learned that the

---

[9]Again, under these circumstances, Defendant has not made a sufficient preliminary showing that Affiant intentionally or deliberately either made a material misrepresentation in the affidavit or omitted material information from the affidavit. See O'Ferrell, 253 F.3d at 1267; Madiwale, 117 F.3d at 1326-27.

26

parking lot of the Buckhead Library is adjoining to the parking lot for the Eclipse Condominium building at 250 Pharr Road, Atlanta, Georgia (the apartment building for the **TARGET LOCATION**).” (Id.).  This information establishes the probability, in the light of the totality of the information in the affidavit, that Defendant Culton is the source of supply being identified by King and corroborates Lagouros’ statement.

The affidavit, as corrected, for the search warrant is to be evaluated based on the totality of the information set forth therein.  See United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000).  And affidavits are not to be judged in “a hypertechnical manner; rather, a realistic and commonsense approach should be employed . . . .” United States v. Miller, 24 F.3d 1357, 1361 (11th Cir. 1994).  The issuing magistrate judge, in deciding whether to sign a search warrant, is “‘simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.’” Jiminez, 224 F.3d at 1248 (quoting Illinois v. Gates, 103 S. Ct. 2317, 2332 (1983)) (internal quotation marks omitted).  In this regard, “‘probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]’” United States v. Brundidge, 170 F.3d 1350, 1352

27

(11th Cir. 1999) (quoting Gates, 103 S. Ct. at 2329); and see United States v. Sanders, 2016 WL 6471046, at *2 (N.D. Fla. October 31, 2016) ("The issuing judge is permitted to draw reasonable inferences using common sense . . ., mindful that probable cause is a 'fluid concept' . . . ."); United States v. Lebowitz, 647 F. Supp. 2d 1336, 1352 (N.D. Ga. 2009) (noting that a magistrate judge may draw reasonable inferences in determining probable cause and that "the affidavit is given a 'common sense and realistic' interpretation") (citation omitted).  For this reason, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations."  Miller, 24 F.3d at 1361 (citing Gates, 103 S. Ct. at 2331-32; United States v. Ventresca, 85 S. Ct. 741, 746 (1965)); accord United States v. Hatcher, 300 Fed. Appx. 659, 663 (11th Cir. 2008) (same).  In reviewing the issuance of the federal search warrant, the undersigned must determine only that Magistrate Judge Larkins had a "substantial basis" for concluding that probable cause existed to uphold the warrant.  See Gates, 103 S. Ct. at 2331; see also Massachusetts v. Upton, 104 S. Ct.

AO 72A
(Rev.8/82)

2085, 2085 (1984) (per curiam).  The corrected affidavit in this case satisfies that standard.

As more thoroughly discussed by the Government [Doc. 76 at 6-11, 15-24], the affidavit established probable cause to believe that Nathans' source of supply for controlled substances resided at the Target Location based on Nathans' repeated travel to that location and, on at least two occasions, subsequent sale of pills to the CS. (Affidavit ¶¶ 11-16).  And the affidavit established probable cause, supported by the agent's opinion and reasonable inferences which could be drawn from the facts, that Defendant Culton, who lived in the Target Location, was Nathans' source of supply. These facts included the tracking information obtained from the Lexus, the video surveillance at the Target Location, the toll records for Nathans' cellular telephone and other records for his Instagram account, and the statements provided by Lagouros and King.  (Id.  ¶¶ 7-9, 19).  Finally, Affiant provided, based on his training and experience, his opinion about the significance of the events depicted in the affidavit and about the items of evidence that would probably be found in Defendant Culton's residence, the Target Location.  (Id. ¶¶ 1-2, 20).

For all of these reasons, the court finds that Defendant is not entitled to a Franks hearing and that his motion to suppress should be denied.

29

c.     **Good Faith**

Furthermore, as the Government correctly argues, even if the affidavit for the search warrant did not establish probable cause, the evidence seized from Defendant's residence should not be suppressed because the good faith exception to the exclusionary rule applies in this case.  [Doc. 76 at 25].  In United States v. Leon, 104 S. Ct. 3405 (1984), and Massachusetts v. Sheppard, 104 S. Ct. 3424 (1984), the Supreme Court established a good faith exception to the exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective.  In United States v. Accardo, 749 F.2d 1477 (11th Cir. 1985), the Eleventh Circuit Court of Appeals discussed the good faith exception established by the Supreme Court.  With the exception of cases "where the issuing magistrate wholly abandoned his judicial role[,]" or where "a warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[,]'" or where "a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid[,]" the good faith exception applies.  Id. at 1480 & n.4 (citations omitted).  The good faith exception "require[s] suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not

30

have harbored an objectively reasonable belief in the existence of probable cause.'" Id. at 1480 (quoting Leon, 104 S. Ct. at 3422).  In making this decision, the totality of the circumstances surrounding issuance of the search warrant may be considered.  Id. at 1481.

The court has already determined that Defendant failed to present sufficient evidence to make a preliminary showing that Affiant either deliberately or with a reckless disregard for the truth included false, material information in the affidavit or omitted material information from the affidavit.   And the search warrant for Defendant's residence was not "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]'"  Leon, 104 S. Ct. at 3421 (citation omitted).  The court notes that the affidavit supporting the search warrant was not a "'bare-bone' statement of nothing more than conclusory allegations" which the Supreme Court in Leon found indicative of warrants falling within the third exception to the good faith doctrine.  See United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998).  The affidavit included details about the drug investigation, including, stating the actions taken by the investigating officers and agents, recounting interviews with witnesses and providing a nexus between Defendant, his residence and the crime.  (Affidavit).  This affidavit presented much

31

more than conclusory, "bare-bone" assertions for consideration by the issuing judge. The affidavit provided factual details for the issuing judge to consider and evaluate. The law enforcement officers were, therefore, entitled to rely upon that evaluation and determination that "given all the circumstances set forth in the affidavit before [the judge], there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." Gates, 103 S. Ct. at 2332.

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 69] to suppress and for a Franks hearing be **DENIED**.

## III.    Conclusion

For these reasons, the court **RECOMMENDS** that Defendant's motion [Doc. 69] to suppress evidence seized during the execution of the search warrant for his residence and for a Franks hearing be **DENIED**.

And the court **DENIES** Defendant's motion [Doc. 68] for the name(s) and location(s) of the confidential informant(s).

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

AO 72A
(Rev.8/82)

**SO ORDERED AND RECOMMENDED** this 26th day of April, 2019.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)