IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION NO. |
| ) | |
| V.   ) | 1: 18-cr-168-2-TCB-JFK |
| ) | |
| EDWARD CULTON   ) | |

## DEFENDANT'S MOTION IN LIMINE

COMES NOW, Edward Culton, and files this Motion in Limine to exclude evidence at trial. In support thereof, Mr. Culton shows as follows:

Mr. Culton has been charged with various fentanyl-related offenses, including distributing and possessing with intent to distribute fentanyl. (Doc. 53). In Counts 1-3, Mr. Culton is charged with distributing fentanyl that resulted in the death of T.C. and the serious bodily injury (overdose) of E.M., pursuant to 21 U.S.C. § 841(b)(1)(C). (*See id.*). If convicted of Counts 1-3 (separately or together), Mr. Culton faces a 20-year mandatory minimum and a significantly higher guideline range. *See* 21 U.S.C. § 841(b)(1)(C).

Mr. Culton pled guilty to Counts 4-9, which charged Mr. Culton with various drug distribution counts, but did not trigger the 20-year mandatory minimum. Mr. Culton is scheduled to go to trial on October 21, 2019. Mr.

1

Culton submits that the evidence described below should be excluded at trial.

> I. **The Court should exclude any evidence or argument that suggests that the alleged victims here did not know that they were buying or using fentanyl.**

Mr. Culton has pleaded guilty to distributing fentanyl, as charged in Counts 4-9. That fentanyl that Mr. Culton distributed was contained in pills with the marking M on one side and 30 on the other side. When produced by the manufacturer, those pills are Roxicodone pills, which contain oxycodone hydrochloride. The government's press releases about this case have focused on the danger of pills that appear to be one substance, but actually contain another substance.[1] The government's factual proffer at the plea hearings of Mr. Nathans and Mr. Culton has emphasized that the pills were counterfeit.[2] Mr. Culton does not dispute that the pills were imprinted

---

[1] Atlanta drug dealer charged with distributing fake Roxicodone pills containing fentanyl, (2018), available at: https://www.justice.gov/usao-ndga/pr/atlanta-drug-dealer-charged-distributing-fake-roxicodone-pills-containing-fentanyl (last visited Oct. 2, 2019).

U.S. Attorney Byung BJay Pak issues progress report fighting opioid epidemic, (2019), available at https://www.justice.gov/usao-ndga/pr/us-attorney-byung-bjay-pak-issues-progress-report-fighting-opioid-epidemic (last visited Oct. 2, 2019).

[2] The transcript from Mr. Culton's plea hearing has been requested, but not yet received.

with "M" and "30," nor does Mr. Culton dispute that the government can present evidence that the pills that were distributed appeared to be Roxicodone pills.

However, all of the parties involved in this case—including the two victims alleged in the indictment—knew that the pills contained fentanyl. More specifically, there are text messages from T.C. where he explicitly requested "fake blues."[3] E.M. gave an interview where she agreed that, prior to the date in question, co-defendant Hubert Nathans had told her that pills actually contained fentanyl. E.M. continued to seek out the pills in question, and in fact, bought at least one more pill from Nathans <u>after</u> the alleged overdose charged in the indictment. (*Id.*).

Because this trial is to determine if Mr. Culton distributed fentanyl pills that resulted in the death of T.C. or the serious bodily injury of E.M.— not the general danger that certain drugs pose to the community—this Court should exclude any testimony or evidence and prevent any argument regarding any alleged widespread danger from distributing counterfeit pills.

At trial, the government has to prove beyond a reasonable doubt that Mr. Culton is guilty of the <u>crimes as charged in the indictment</u>. *In re Winship*,

---

[3] This is slang for fentanyl pills. The pills are blue in color.

397 U.S. 358 (1970). The unresolved counts involve T.C. and E.M., who both knew what they were receiving when they bought the pills and then ingested them. Because evidence of the broader dangers involved in distributing fentanyl in pills that resembled other substances does not make a fact "of consequence in determining the action" more or less probable, the evidence is not relevant. *See* Fed.R.Evid. 401. Consequently, the evidence should be excluded on that basis. *See* Fed.R.Evid. 402 ("Irrelevant evidence is not admissible.").

Further, evidence and/or argument about the dangers to the general public would be calculated solely to inflame the jury, and therefore, should be excluded under Rule 403. *See* Fed.R.Evid. 403 (allowing the exclusion of evidence if its probative value is substantially outweighed by unfair prejudice, the potential to confuse the issues or to mislead the jury); *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650 (1997) (in criminal cases, the term unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"); *United States v. Utter*, 97 F.3d 509, 514-15 (11th Cir. 1996) ("The major function of Rule 403 is to

exclude matters of scant or cumulative probative force, ragged in by the heels for the sake of its prejudicial effect.").

Aside from those rules, speculation about potential dangers or harm to the general public should not be allowed at trial.  Unless the witness were qualified as an expert relevant to this issue,[4] such testimony would have to meet the requirements of Rules 701 and 602.  Under Federal Rule of Evidence 701, a lay witness may provide opinion testimony if that testimony is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed.R.Evid. 701.  Under Federal Rule of Evidence 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."  Fed.R.Evid. 602.  Rules 602 and 701 constitute "the familiar requirement of first-hand knowledge or observation."  *United States v.*

---

[4] Counsel has not received any expert notice that would allow anyone to testify as an expert on this issue.

5

*Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (quoting the advisory committee's note to Rule 701).

First, for the same reasons that it is not relevant, such testimony would not "be helpful to determining a fact in issue." *See* Fed.R.Evid. 701(b). Second, there is no evidence provided in discovery to suggest that any of the potential witnesses have direct and personal experience with an individual taking pills that they did not know contained a different substance. Consequently, they should not be allowed to testify as such. Therefore, this Court should prevent any evidence or argument about alleged dangers associated with distributing fentanyl in counterfeit pills.

## II. The Court should exclude any evidence or argument about the "opioid epidemic."

For similar reasons, the Court should exclude any evidence or argument by the government about the "opioid epidemic." The government has included this case in its public communications regarding the opioid epidemic.[5] Moreover, according to the press releases issued related to this case, this case is part of Operation SCOPE ("Strategically Combatting

---

[5] U.S. Attorney Byung BJay Pak issues progress report fighting opioid epidemic, (2019), available at https://www.justice.gov/usao-ndga/pr/us-attorney-byung-bjay-pak-issues-progress-report-fighting-opioid-epidemic (last visited Oct. 2, 2019).

Opioids through Prosecution and Enforcement").[6] The opioid epidemic is the subject of extensive news coverage.

This Court should reject any attempt by the government to present this case at trial as part of the movement to end or eliminate the opioid epidemic. What has happened to other people who are not T.C. or E.M. is irrelevant at this trial, as are the prevalence of drugs (whether fentanyl or other opioids) and how or why people come to use or abuse them.

Moreover, if the jury is led to believe that it can combat the opioid epidemic by convicting Mr. Culton of Counts 1-3, Mr. Culton will be deprived of a fair trial. Again, at trial, the only issue in front of the jury will be whether the government proved beyond a reasonable doubt that Mr. Culton committed the remaining crimes charged in the indictment. Any evidence about the broader opioid epidemic—including other overdoses or deaths—is both irrelevant and unduly prejudicial, such that the undue prejudice to Mr. Culton clearly outweighs the non-existent probative value of this type of evidence and argument. Accordingly, this evidence should be excluded under Rules 401-403.

---

[6] *See, supra,* n.1.

### III. The Court should prevent any hearsay evidence or argument that exaggerates the harm of fentanyl.

Fentanyl has been the subject of intense media scrutiny, due to its increasing prevalence during the opioid epidemic. Part of that scrutiny discusses the risks associated with fentanyl, including that it is allegedly possible to overdose on fentanyl merely from touching it. Fentanyl has reached nearly myth-like stature in the media. However, many of the concerns presented by those articles are unfounded.[7] The inaccurate description of the danger of fentanyl caused the American College of Medical Toxicology and the American Academy of Clinical Toxicology to issue a Position Statement and press release on preventing exposure to fentanyl and its analogues for emergency responders.[8] These documents generally rebuke the idea that fentanyl (or its analogues) are so dangerous that merely touching it can result in an overdose. The lead author of the statement emphasized that it is "just not plausible that getting a small

---

[7] Adam H. Johnson, *The Appeal Podcast: The Media's Misguided Fentanyl Hype*, The Appeal (Jul. 18, 2019), https://theappeal.org/the-appeal-podcast-the-medias-misguided-fentanyl-hype/.

[8] ACMT and AACT Position Statement: Preventing Occupational Fentanyl and Fentanyl Analog Exposure to Emergency Responders, (July 18, 2019), https://www.acmt.net/_Library/Positions/Fentanyl_PPE_Emergency_Responders_.pdf

amount of fentanyl on your skin is going to cause significant opioid toxicity."[9]

Mr. Culton requests that this Court preclude the government from introducing any evidence or making any argument about the dangers of fentanyl[10] that is not supported by science and/or relevant to the facts of this case. Any emphasis on the danger of fentanyl beyond the scope of what is charged in the indictment is not relevant and is unduly prejudicial. *See* Fed.R.Evid. 401-403. It should not be implied to the jury that it needs to convict Mr. Culton based on the risk allegedly posed by fentanyl to the general public.

Further, Mr. Culton seeks to exclude any speculation or hearsay testimony about what people have heard regarding the dangers of fentanyl. Any lay testimony about the dangers of fentanyl must be based on personal

---

[9] ACMT and AACT Position Statement: Preventing Occupational Fentanyl and Fentanyl Analog Exposure to Emergency Responders, (July 18, 2019), https://www.acmt.net/_Library/Positions/Fentanyl_PPE_Emergency_Responders_.pdf; ACMT Releases Safety Precautions for Emergency Responders in Case of Fentanyl Exposure, (Jul 19, 2017), https://www.acmt.net/_Library/Press_Releases/ACMT_Fentanyl_Exposure_PR.pdf.

[10] The fentanyl is this case is fentanyl, not one of the analogues. Some of the analogues are statistically much more dangerous than fentanyl itself. *See* Position Statement at 347.

knowledge, as described above.[11]  See Fed.R.Evid. 701, 610.  No one should be allowed to testify that they "heard" fentanyl was responsible for deaths or overdoses, or that they "heard" fentanyl was much more dangerous than other opioids.

### IV. This Court should issue a limiting instruction to ensure the jury does not consider co-defendant Hubert Nathans' plea as evidence of Mr. Culton's guilt.

As this Court knows, the primary issue that Mr. Culton intends to challenge at trial is the causation—can the government prove beyond a reasonable doubt that Mr. Culton provided fentanyl that was either a but-for cause of the death and/or serious bodily injury or an independently sufficient cause of the death and/or serious bodily injury.  At trial, Mr. Culton expects co-defendant Hubert Nathans to testify about purchasing fentanyl from Mr. Culton and distributing it to T.C. and E.M.  Mr. Nathans has already pled guilty to an information that charges him with being responsible for the death of T.C. and the serious bodily injury of E.M.  (Cite).

Mr. Culton does not object to this evidence coming in, but he requests that this Court give a limiting instruction to ensure that the jury does not consider Mr. Nathans' plea as evidence of causation—i.e., to prevent the jury

---

[11] Mr. Culton has not received any expert notice regarding the danger of fentanyl.

10

from thinking, "If Mr. Nathans pled guilty, then Mr. Culton is guilty too." Mr. Culton requests that this Court instruct the jury before or during Mr. Nathans' testimony that "the fact that a witness has pleaded guilty to an offense isn't evidence of Mr. Culton's guilt." *See* 11th Cir. Pattern Instruction S1.2.

> **V.      This Court should preclude the government from introducing any evidence that Mr. Culton of any prior interactions with law enforcement or any prior convictions.**

This Court should prevent the government from referencing in any way any of Mr. Culton's prior interactions with law enforcement and/or the criminal justice system in general. Mr. Culton submits that evidence of any prior interactions with law enforcement is not relevant at all, while it is incredibly prejudicial to the jury. Therefore, Mr. Culton requests that the government be prohibited from introducing any evidence of any prior interaction with law enforcement at trial and from arguing any of these facts to the jury. Moreover, Mr. Culton requests that the Court issue an order directing the government that no witness should disclose to the jury or discuss the fact of any prior interactions with law enforcement.

n/a

WHEREFORE, Mr. Culton requests that this Court exclude the evidence as described above in order to ensure that Mr. Culton receives a fair trial.

Respectfully submitted this 3rd day of October 2019.

/s/ *Leigh Ann Webster*
Leigh Ann Webster
Ga. Bar No. 968087
Attorney for Edward Culton

STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
(404) 590-7967
law@stricklandwebster.com

/s/ *Saraliene S. Durrett*
Saraliene S. Durrett
GA Bar No. 837897
Attorney for Edward Culton

Saraliene Smith Durrett, LLC
1800 Peachtree St.
Suite 300
Atlanta, GA 30309
(404) 433-0855
ssd@defendingatl.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion was filed by uploading it with the Northern District of Georgia's Electronic Filing System which will automatically serve opposing counsel with the Motion.

Dated: This 3rd day of October, 2019.

/s/ *Leigh Ann Webster*
Leigh Ann Webster
Ga. Bar No. 968087
Attorney for Edward Culton

STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
(404) 590-7967
law@stricklandwebster.com